# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DR. FRANCIS STEPHEN VOGEL,   )
                                    )
                Plaintiff,    )
v.                     )      **MEMORANDUM OPINION**
                                      )      **AND RECOMMENDATION**
WOLTERS KLUWER HEALTH, INC.   )
d/b/a LIPPINCOTT WILLIAMS & WILKINS; )
WOLTERS KLUWER UNITED STATES,   )        1:07CV62
INC.; WOLTERS KLUWER U.S.      )
CORPORATION; and DR. JOHN Q.    )
TROJANOWSKI,             )
                                      )
              Defendants.   )

      This matter is before the court on a motion to dismiss by all Defendants (docket no. 23). Plaintiff Francis Vogel has responded in opposition to the motion and the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge. The motion must, therefore, be dealt with by way of recommendation. For the following reasons, it will be recommended that the court grant Defendants' motion to dismiss.

## FACTS

      On October 12, 2007, Plaintiff filed an amended complaint against Defendants, asserting claims for copyright infringement under the Copyright Act (Count 1), false designation of origin under the Lanham Act (Count 2), as well as a state law claim for unfair and deceptive trade practices (Count 3). Plaintiff seeks injunctive relief and damages. Plaintiff alleges that in the early 1980s he was asked

to author a section in a medical textbook titled *Pathology*, which was published by Defendants Wolters Kluwer Health, Inc. d/b/a Lippincott Williams & Wilkins, Wolters Kluwer United States, Inc., and Wolters Kluwer U.S. Corporation (collectively referred to as "Wolters"). (Am. Compl. ¶ 13.) Plaintiff authorized Wolters to publish the material he authored in the first edition of *Pathology.* (Am. Compl. ¶ 14.) Plaintiff further alleges that Wolters subsequently asked him to update his material for the subsequent second and third editions of *Pathology.* (Am. Compl. ¶¶ 19 & 23.) Plaintiff alleges that he updated his section in the second edition of *Pathology* for Wolters, and he co-authored an update of his section in the third edition. (Am. Compl. ¶¶ 19, 23-24.) Plaintiff states that he never authorized Wolters to use the material he authored or co-authored for anything other than publication in the first through third editions of *Pathology.* (*See* Am. Compl. ¶¶ 15, 19, & 25.)

Plaintiff's claims relate to the publication of the fourth edition of *Pathology* and the distribution of the material in it by Wolters. Plaintiff alleges that Wolters published a fourth edition of *Pathology* containing a section on neuropathology that substantially copied the text allegedly authored by Plaintiff, including images that Plaintiff had selected, compiled, and provided to Wolters for use in the earlier editions of *Pathology.* (*See* Am. Compl. ¶ 32.) Plaintiff also alleges that Defendant Dr. John Trojanowski was improperly listed as the sole author of this section in the fourth edition of *Pathology.* (*See* Am. Compl. ¶ 36.) Plaintiff similarly asserts that he has reviewed a "proof" of a fifth edition of *Pathology* that also contains materials

2

authored by him, which he contends are being incorrectly attributed to Dr. Trojanowski.[1] (*See* Am. Compl. ¶ 50.) Based on the foregoing allegations, Plaintiff asserts a claim for copyright infringement relating to the fourth edition of *Pathology*. (*See* Am. Compl. ¶ 58.) Plaintiff also asserts a claim for false designation of origin relating to Wolters' listing of Dr. Trojanowski as the author of the section at issue in the fourth edition of *Pathology.* (*See* Am. Compl. ¶ 65.) Finally, Plaintiff asserts a claim for unfair and deceptive trade practices under N.C. GEN. STAT. § 75-1.1. (*See* Am. Compl. ¶¶ 72-75.) Plaintiff brings all three claims against both the Wolters Defendants as well as Dr. Trojanowski.

In the motion to dismiss, Defendants ask the court to (1) dismiss the false designation of origin claim for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure; (2) dismiss the unfair and deceptive trade practices claim as preempted by the Copyright Act, also under Rule 12(b)(6); and (3) dismiss Dr. Trojanowksi as a Defendant based on lack of personal jurisdiction under Rule 12(b)(2).

## DISCUSSION

## STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not

---

[1] Plaintiff does not appear to assert any claims related to the fifth edition of *Pathology.* (*See* Am. Compl. ¶¶ 50, 58.)

3

to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

Generally, the court looks only to the complaint itself to ascertain the propriety of a motion to dismiss. *See George v. Kay*, 632 F.2d 1103, 1106 (4th Cir. 1980). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978). This duty of fair notice under Rule 8(a) requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). As the Supreme Court has recently instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations and alteration omitted). With these principles in mind, the court now turns to the motion to dismiss.

**I. Defendants' Contention that Plaintiff's False Designation of Origin Claim is Barred under *Dastar Corp. v. Twentieth Century Fox Film Corp*.**

4

Defendants first contend that Plaintiff's "false designation of origin" claim is barred under the U.S. Supreme Court's opinion in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). For the following reasons, I agree.

Section 43(a) of the Lanham Act provides, in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). In Count II of the Amended Complaint, Plaintiff alleges that Defendants' attribution of authorship to Defendant Dr. Trojanowski of a section in the fourth edition of *Pathology* and the unauthorized use of Plaintiff's name on the Acknowledgments page of the fourth edition constitutes a violation of section 43(a). (*See* Am. Compl. ¶¶ 65-71.) More specifically, Plaintiff alleges, among other things, that

> The Defendants' attribution of the authorship of [Plaintiff's] work to Dr. John Q. Trojanowski creates a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or as to the origin, sponsorship, or approval of the origin of the text and compilation of images.
>
> The false designations of origin and of [Plaintiff's] contributions to *Pathology* and the chapter on neuropathology contained therein has

5

created a likelihood of confusion among the consuming public as to the true authorship of the work that [Plaintiff] provided and that has been used in the fourth and revised fourth editions of *Pathology* and will create the same effect with respect to the fifth edition if published in its current or any substantially similar form.

Defendants' unauthorized use of [Plaintiff's] name in their 'Acknowledgments' page and their use of Dr. Trojanowski's name in connection with [Plaintiff's] own work and work derived from that of [Plaintiff], as well as the listing of [Plaintiff] as a 'contributor' to the revised fourth edition of *Pathology*, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or as to the origin, sponsorship, or approval of the origin of the fourth and revised fourth editions of *Pathology*.

(*See* Am. Compl. ¶¶ 65-67.)

Plaintiff's Lanham Act claim is clearly foreclosed by the U.S. Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). In that case, Plaintiff Dastar copied Defendant Fox's *Crusade* television series, made minor modifications, and manufactured and sold its own series of videotapes called *Campaigns. See id.* at 31. Fox and two of its licensees sued Dastar, alleging copyright infringement and that Dastar's sale of *Campaigns* without proper credit to the *Crusade* television series constituted a violation of section 43(a) of the Lanham Act. *See id.* at 27. In determining whether Fox and its licensees could state a claim for false designation of origin under section 43, the Court observed that the viability of the plaintiffs' claim hinged on the meaning of "origin of goods." *See id.* at 31. The Court stated that:

reading the phrase "origin of goods" in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to

6

protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.

*Id.* at 37 (emphasis in original). In applying this meaning of "origin of goods," the Court concluded that because Dastar, not Fox, was the "origin" of the products it sold on its own (the *Campaign* videotapes), the plaintiffs could not prevail on their Lanham Act claim. *See id.* at 38. The court observed that "[t]he creative talent of the sort that lay behind the *Campaigns* videos is not left without protection," as Fox could still potentially pursue protection under the copyright laws as to some of the material. *See id.* at 37-38.

Applying *Dastar* to the facts in this case compels a conclusion that Plaintiff cannot state a claim under the Lanham Act. That is, just as Dastar was the "origin" of the goods at issue in *Dastar* (the *Campaign* videotapes)*,* Wolters was the "origin" of the goods at issue here (the different editions of the book *Pathology*). Plaintiff contends, however, that *Dastar* must be narrowly construed to bar Lanham Act claims only where the original copyright has expired. Plaintiff contends that the "critical element" in *Dastar* was that the material copied was already in the public domain and free to be copied. (Pl.'s Br. 14.) Thus, according to Plaintiff here, the plaintiff in *Dastar* was effectively attempting to use the Lanham Act to achieve a result forbidden under copyright law: preventing publication of a public domain work. Plaintiff contends that here, however, the "subject work is not and never has been

7

in the public domain, nor did Defendants have the authorization to copy [Plaintiff's] work for the fourth edition, the revised fourth edition, or the fifth edition of *Pathology*." (Pl.'s Br. 14.) Plaintiff contends that he does not seek to extend his copyright interest under the guise of the Lanham Act and that *Dastar* does not bar his Lanham Act claim.

Plaintiff's interpretation of *Dastar* is incorrect. First, the Court's holding in *Dastar* did not turn on whether the work was in the public domain. Rather, the *Dastar* Court indicated that the viability of a plaintiff's claim for false designation of origin turns on an analysis of the origin of the accused goods–in this case, the *Pathology* textbook. As noted, the *Dastar* Court observed that the phrase "origin of goods" as used in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar Corp.*, 539 U.S. at 37. As the Court explained, "[t]he consumer who buys a branded product does not automatically assume that the brand-name company is the same entity that came up with the idea for the product, or designed the product—and typically does not care whether it is." *Id.* at 32-33. Thus, "[t]he words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." *Id.* Finally, the Court stated that "in construing the Lanham Act, we have been careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright." *Id.* at 34 (internal quotations omitted). Plaintiff has never been

8

the producer of any tangible good for sale relating to his claims. Rather, Plaintiff's claims arise from alleged authorship and copyrights in manuscripts he submitted to Wolters as a purported author of chapters in previous editions of *Pathology.* In other words, Plaintiff's claims are claims of false authorship that must be pursued under copyright law.[2]

As Defendants note, other courts have interpreted *Dastar* as finding that section 43(a) does not protect the merely communicative aspects of goods apart from the goods themselves. In *Zyla v. Wadsworth*, *Div. of Thomson Corp.*, 360 F.3d 243 (1st Cir. 2004), for instance, the U.S. Court of Appeals for the First Circuit affirmed dismissal of a section 43(a) claim similar to the claim asserted by Plaintiff in this case. In *Zyla,* Gail Zyla and Marie Struble co-authored the second and third editions of a college textbook. *See id.* at 246. Zyla withdrew from the project, and the fourth edition was published with Struble listed as the sole author and with Zyla's name listed in the acknowledgments section. *See id.* at 248-49. Zyla sued the textbook publisher and Struble, alleging that the fourth edition incorporated her work

_____

[2] Plaintiff cites this court's decision in *Universal Furniture, International, Inc. v. Collezione Europa USA, Inc.* to support his argument that he has a Lanham Act claim. No. 1:04cv977, 2007 WL 1232075, at *6 (M.D.N.C. Apr. 26, 2007). This court, however, allowed the Lanham Act claim to survive in *Universal Furniture* because the defendant "acquired *actual pieces* of [Plaintiff's] furniture and began displaying, offering for sale, and selling these items of furniture as though they were the collections and designs of [Plaintiff]." *Id.* at *6 (emphasis in original) (internal quotations omitted). Thus, unlike Plaintiff in this case, in *Universal Furniture* the defendant infringer was displaying tangible goods produced by the plaintiff as if the defendant produced or was the origin of those goods. The court specifically noted that because of this fact *Dastar* did not apply. *Id.*

9

without her permission and without appropriate attribution. *See id.* at 246. Affirming the district court's grant of summary judgment in favor of the defendants, the First Circuit concluded that "*Dastar* controls here and bars Zyla's Lanham Act claim." *Id.* at 252. As the court explained, "[c]laims of false authorship . . . should be pursued under copyright law instead" of the Lanham Act. *Id.*; *see also Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, 350 F. Supp. 2d 613, 618 (E.D. Pa. 2004) ("[B]ecause Defendants are the physical producers . . . of [the book] *1000 Patterns*, they cannot be held liable under § 43(a)(1)(A) even if they are not the creators of the pictures at issue."); s*ee also Mays & Assocs., Inc. v. Euler*, 370 F. Supp. 2d 362, 371 (D. Md. 2005) (granting Defendants' motion to dismiss Lanham Act claim under *Dastar*, stating that "[u]nder *Dastar*, § 43(a) of the Lanham Act only covers the *tangible goods* themselves and not 'any idea, concept, or communication embodied in those goods,' which is covered, in this case, by copyright law") (quoting *Dastar*, 539 U.S. at 37) (emphasis in original); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 572 (E.D. Va. 2004) (referencing *Dastar*, and stating that "[t]he 'origin' of a good or service is the producer of the tangible product offered for sale, not the author of any idea or concept embodied in that product"). As these cases demonstrate, a court should not entertain a false designation of origin claim where the claim is in substance a copyright infringement claim.

10

In sum, because *Dastar* bars Plaintiff's claim for false designation of origin, the court should dismiss this claim.[3]

## II. Defendants' Contention that Plaintiff's Claim for Unfair and Deceptive Trade Practices Is Preempted by the Copyright Act

Defendants next contend that Plaintiff's claim for unfair and deceptive trade practices under N.C. GEN. STAT. § 75-1.1 is preempted by the Copyright Act. For the following reasons, I agree.

Section 301(a) of the Copyright Act provides:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). The Fourth Circuit has held that section 301 of the Copyright Act preempts state law claims if the work is "within the scope of the subject-matter of copyright" . . . and "the rights granted under state law" must be "equivalent to any exclusive rights within the scope of federal copyright . . . ." *United States ex rel.*

---

[3] I note that the Amended Complaint also purports to state a claim for false designation of origin under North Carolina common law. Defendants essentially contend in their brief that this claim is really a claim for copyright infringement and that a common law claim for copyright infringement is preempted by the Copyright Act. (*See* Defs.' Br. 6 n.2.) Plaintiff appears to concede this argument because he does not address in his brief the motion to dismiss as to the claim for false designation of origin under North Carolina common law.

*Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997) (quoting *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993)) (internal quotations omitted).

Plaintiff's state law claim for unfair and deceptive trade practices rests on the same conduct underlying the copyright infringement claim–the alleged copying of material purportedly authored by Plaintiff, and the distribution of the fourth edition of *Pathology* containing this material. The fourth edition of *Pathology* is clearly a work "within the subject matter of copyright," and the purported state law rights that Plaintiff seeks to enforce are equivalent to the "exclusive rights within the scope of federal copyright." Thus, Plaintiff's state law claim for unfair and deceptive trade practices is preempted by copyright law, and the court should dismiss this claim. *Accord Iconbazaar, L.L.C. v. Am. Online, Inc.*, 308 F. Supp. 2d 630, 637 (M.D.N.C. 2004) (finding a claim under N.C. GEN. STAT. § 75-1.1 preempted by copyright law and stating: "While there may be extra elements of fraud or deceit in any given unfair trade practices claim, there are no additional elements *required* in order to state an unfair trade practices claim than there are required to state a copyright claim. Accordingly, the state law claim is preempted by federal copyright law.") (emphasis in original); *see also Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 535 (E.D. Va. 2005) (holding that conversion and unjust enrichment claims were preempted by the Copyright Act, since they were not "qualitatively different" from a

12

copyright claim because they contained no "extra element" beyond those necessary to show copyright infringement).

Plaintiff contends, however, that he alleges an "extra element of deception" and "[t]he focus of [Plaintiff's] § 75-1.1 claim is the Defendant[s'] continued unfair, false, misleading, and deceptive acts and practices after notice" of the copyright infringement.  (Pl.'s Br. 19.)  Plaintiff contends that "[e]ven after some or all of the Defendants were expressly aware that Defendants' use of [Plaintiff's] copyrighted work in any form was unauthorized, . . . Defendants continued to make available for sale the fourth edition of *Pathology,* unaltered in any form and CDs and/or a DVD Image Bank containing all or part of [Plaintiff's] copyrighted work."  (Pl.'s Br. 19-20.) Plaintiff contends that "[n]either of the Defendants tried to contact [Plaintiff] about the revision of the fourth or fifth editions of *Pathology*," despite that Plaintiff's location was well known to those involved in preparing the revised edition of *Pathology.* (Pl.'s Br. 20.)  Finally, Plaintiff notes that this court has found in at least one case that an unfair and deceptive trade practices claim was not preempted by the Copyright Act.  In *Baldine v. Furniture Comfort Corp.*, 956 F. Supp. 580, 587 (M.D.N.C. 1996), for instance, the court found that where separate allegations of fraud constituted the most substantial part of a § 75-1.1 claim that also involved copyright infringement, the § 75-1.1 claim was not preempted.

Plaintiff's contention is without merit.  It is true that this court found no preemption in *Baldine*.  In *Baldine*, however, in addition to alleging copyright

13

infringement, the plaintiff also alleged that the defendant fraudulently told the plaintiff that he would pay her to work on a design center, while knowing that he had no intention of paying her, and instead that he planned all along for her to do the design work so that he could then use it without having to pay her for it.  *See Baldine*, 956 F. Supp. at 587.  This court stated that "[f]alse representations made by [Defendant] . . . for the purpose of obtaining [Plaintiff's] design with intent to use it without paying for it would constitute a viable claim under 75-1.1 since the fraud and not the actual copyright violation would be the gravamen of the claim."  *Id.* at 587.  Unlike the plaintiff in *Baldine,* Plaintiff here alleges at most that Defendants knew that they were infringing on Plaintiff's copyrights and that they attempted to keep him from finding out about the infringement.  The Fourth Circuit has observed, however, that "[a]n action will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but not its nature."  *Rosciszewski*, 1 F.3d at 230 (internal citations omitted).  Here, the only difference between Plaintiff's copyright claim and his unfair and deceptive trade practices claim is the insertion of an additional allegation of deception.  While Plaintiff's additional allegation of deception alters the scope of Plaintiff's claim under section 75-1.1, the nature of the state law claim remains identical to a claim under federal copyright law by virtue of the elements required by section 75-1.1.  Therefore, this court should dismiss Plaintiff's unfair and deceptive trade practices claim as preempted by the Copyright Act.

### III. Whether the Court Lacks Personal Jurisdiction Over Defendant Dr. John Trojanowski

Defendant Dr. Trojanowski is a Pennsylvania resident and Director of the Alzheimer's Center and the Alzheimer's Research Trust at the University of Pennsylvania School of Medicine. Dr. Trojanowksi submitted a manuscript to Wolters to be used in the fourth edition of the *Pathology* textbook. Plaintiff contends that the Pathology textbook incorrectly names Dr. Trojanowski as the author of Plaintiff's own copyrighted work, and Plaintiff brings claims against Dr. Trojanowski for copyright infringement, false designation of origin, and unfair and deceptive trade practices. In his motion to dismiss, Dr. Trojanowski contends that his contacts with North Carolina are insufficient for this court to assert personal jurisdiction over him. For the following reasons, I agree.

When a court's exercise of personal jurisdiction is challenged pursuant to a Rule 12(b)(2) motion, the plaintiff must prove the existence of a ground for jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If jurisdiction turns on disputed facts, the court may conduct an evidentiary hearing, or postpone ruling on the motion pending receipt of evidence relating to jurisdiction at trial. *Id.* If the court considers the jurisdictional challenge based solely on motion papers, supporting legal memoranda, and pleadings, the plaintiff need only make a prima facie showing of a sufficient jurisdictional basis. *Id.* When considering a jurisdictional challenge based on the record, the court must

construe allegations contained in the pleadings in the light most favorable to the plaintiff, assume credibility, and the most favorable inferences stemming from the evidence must be drawn in favor of the existence of jurisdiction. *Id.* Where the defendant has provided evidence, however, that denies facts essential for jurisdiction, the plaintiff must present sufficient evidence to create a factual dispute on each jurisdictional element that has been denied by the defendant and on which the defendant has presented evidence. *See Gemini Enters., Inc. v. WFMY Television Corp.,* 470 F. Supp. 559, 565 (M.D.N.C. 1979).

To determine whether personal jurisdiction is proper, the court must engage in a two-part inquiry. First, the long-arm statute of North Carolina must provide a statutory basis for the assertion of personal jurisdiction and, second, the exercise of personal jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[4] Due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and

---

[4] The Fourth Circuit has indicated that North Carolina's long-arm statute is to be construed liberally "to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Century Data Sys., Inc. v. McDonald*, 109 N.C. App. 425, 427, 428 S.E.2d 190, 191 (1993)). Thus, courts will sometimes proceed directly to the due process inquiry and consider whether Defendant has "minimal contacts" with North Carolina such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). It is, therefore, not necessary to spend an inordinate amount of time analyzing the application of the long-arm statute.

16

substantial justice." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 942 (4th Cir. 1994). When examining the sufficiency of a non-resident defendant's contacts, "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *Id.* at 945. In short, jurisdiction is proper when a relationship exists between the defendant and the forum "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In *Lesnick*, this circuit's court of appeals articulated a two-part test to be applied when determining whether the requirements of due process are satisfied. Under this test, the court should consider whether:

> (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.

*Lesnick*, 35 F.3d at 945-46. Finally, personal jurisdiction may be exercised either specifically or generally. *Slaughter v. Life Connection of Ohio*, 907 F. Supp. 929, 933 (M.D.N.C. 1995). Specific jurisdiction is established where the forum state asserts personal jurisdiction over a defendant in a suit "arising out of or related to" that defendant's contacts with the state. *Id.* (citing *Helicopteros Nacionales de*

17

*Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). By contrast, general jurisdiction is established where the defendant's contacts with the forum state have been systematic and continuous even though the contacts do not have any relation to the plaintiff's claim. *Id.*

A. Whether the Court May Assert Personal Jurisdiction over Defendant Trojanowski under North Carolina's Long-Arm Statute

Plaintiff first contends that the court may assert specific personal jurisdiction over Defendant Trojanowski under the following sections of North Carolina's long-arm statute:

> (1) Local Presence or Status.--In any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party: . . . .
>
> d. Is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise. . . . .
>
> (3) Local Act or Omission.--In any action claiming injury to person or property or for wrongful death within or without this State arising out of an act or omission within this State by the defendant.
>
> (4) Local Injury; Foreign Act.--In any action for wrongful death occurring within this State or in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:
>
> a. Solicitation or services activities were carried on within this State by or on behalf of the defendant;
>
> b. Products, materials or thing processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade.

N.C. GEN. STAT. § 1-75.4.  First, with respect to section 1-75.4(1) ("Local Presence or Status"), Plaintiff contends that Dr. Trojanowski is engaged in substantial activity within North Carolina.[5]  Plaintiff points out, for instance, that Dr. Trojanowski "has posted an online lecture intended to be downloaded by students, foreseeably including those within the Middle District of North Carolina where three major medical schools are located."  (Pl.'s Br. 8.)  Plaintiff further notes that Dr. Trojanowski has posted numerous comments and articles in online forums where participants in North Carolina are members, "purposefully directing his comments and articles to those members, among others."  (Pl.'s Br. 9.)  Plaintiff further asserts that Dr. Trojanowksi has co-authored articles with authors from North Carolina, and he has caused numerous articles and books that he has written and/or edited to be circulated and sold within North Carolina, including the book *Pathology.*  (*Id.*) Plaintiff also contends that Dr. Trojanowski has "solicited and obtained a substantial grant from North Carolina Rotarians."  (*Id.*)  Plaintiff is referring to the fact that Dr. Trojanowski, in his capacity as Director of the Alzheimer's Center and the Alzheimer's Research Trust at the University of Pennsylvania School of Medicine, reviewed and signed a grant application in around 2002 on behalf of the University. (*See* Trojanowski Supp. Decl. ¶¶ 1-2, docket no. 33.)  The grant application was

---

[5]  In his brief, Plaintiff focuses on Defendant Trojanowski's contacts with this judicial district in particular, but Plaintiff need only show contacts with the State of North Carolina generally for purposes of establishing personal jurisdiction.

submitted to an organization that was formed by Rotary chapters and officers in several states, including North Carolina.

In further support of his argument that Dr. Trojanowksi has engaged in substantial activity within North Carolina, Plaintiff notes that Dr. Trojanowski is an associate editor of an online journal, *Alzheimer's & Dementia,* which publishes articles that are circulated in North Carolina and other states. (Pl.'s Br. 9.) Plaintiff notes that the journal's editorial board includes five members from Chapel Hill and Durham, North Carolina, among other places. Plaintiff asserts that Dr. Trojanowski serves as an editor of the journal and has published at least six substantive articles in it within the past year. (*Id.*) Plaintiff contends that these articles were "clearly and obviously intended for interstate circulation over the Internet to, among other places, the Middle District of North Carolina." (*Id.*)

Next, with respect to Dr. Trojanowski's contacts under section 1-75.4(3) ("Local Injury; Foreign Act"), Plaintiff contends that Dr. Trojanowski circulated or caused to be circulated in this district the manuscript "he admittedly provided to Defendants Wolters, knowing that it would be published in *Pathology*, and intending that it be circulated into all the jurisdictions where *Pathology* was to be sold." (*Id.*) Plaintiff contends that Dr. Trojanowski "committed contributory infringement by causing Defendants Wolters to distribute infringing material in this District." (*Id.*) Plaintiff further contends that Dr. Trojanowski "committed his violations of the Lanham Act and unfair and deceptive trade practices within this District by causing

20

the wrongful materials to be circulated in this district–materials that falsely attributed to Dr. Vogel a connection with materials that he had neither approved nor authorized; and that falsely attributed source and origin to Dr. Trojanowski." (*Id.* at 9-10.)

Finally, with respect to Dr. Trojanowski's contacts under section 1-75.4(4) ("Local Act or Omission"), Plaintiff asserts that by copying Plaintiff's work and by providing it to the publisher Wolters, and by affiliating himself with its publication in *Pathology* and by serving as an associate editor of *Pathology*, Dr. Trojanowski

> placed the infringing and misattributed work into the stream of commerce aimed at the Middle District of North Carolina, where both [Plaintiff] himself, as well as multiple medical schools and medical students–the intended audience for the work–are located. . . . . With four major medical schools in North Carolina, three of them located in the Middle District of North Carolina, and Defendants Wolters marketing and selling to promote the textbook domestically through direct mail, advertising, bookstores, and the internet, Dr. Trojanowski knew or should have known the Middle District of North Carolina was a likely destination of the book, that he would cause harm in that District, and that he would receive benefit from the wrongful acts that he caused and contributed to in that District.

(*Id.* at 11.) Plaintiff contends that Dr. Trojanoski's conduct therefore satisfies the first two prongs of section 1-75.4(4). That is, Plaintiff contends that

> "[s]olicitation or services activities" including solicitations of book purchases as well as providing downloadable copies of the infringing and falsely attributed copy of *Pathology,* occurred in the Middle District of North Carolina, made possible by and conducted on behalf of Dr. Trojanowski since he was and is legally responsible for those actions. Likewise, "products," including the chapter provided to Defendants Wolters by Dr. Trojanowski and the copies of *Pathology* into which that chapter was placed, were used and consumed in this state as

21

*Pathology* was sold by Defendant Wolters in North Carolina. As stated above, Dr. Trojanowski knew, or should have known, that North Carolina was a likely destination of the medical textbooks, and N.C.G.S. § 1-75.2 makes him personally responsible, from a jurisdictional perspective, for the acts of Defendants Wolters. Defendants' business in North Carolina is sufficient for purposes of specific personal jurisdiction.

(*Id.* at 11-12.) Plaintiff contends that personal jurisdiction over Dr. Trojanowski under

N.C. GEN. STAT. § 1-75.4 has therefore been satisfied.

B.  Whether Asserting Personal Jurisdiction over Defendant Trojanowski Would

Offend Notions of Due Process

In addition to contending that North Carolina's long-arm statute provides a

statutory basis for the assertion of personal jurisdiction over Dr. Trojanowski, Plaintiff

also contends that the court's assertion of personal jurisdiction would not offend

notions of due process. Plaintiff first contends that Dr. Trojanowski's contacts with

North Carolina are sufficient for the court to assert *general* personal jurisdiction over

Dr. Trojanowski. Plaintiff contends that Dr. Trojanowski has

engaged in regular, continuous and systematic contacts with the Middle District of North Carolina. He posts lectures for downloading here, posts articles and comments for downloading by North Carolina readers, co-authors articles with North Carolina physicians, contributes to numerous books and articles circulated and sold in the district, and has solicited and obtained a substantial grant from North Carolina Rotarians. These contacts are sufficient to establish general jurisdiction over Dr. Trojanowski.

(*Id.* at 12-13.) Plaintiff also contends that this court may assert *specific* personal

jurisdiction over Dr. Trojanowski. Plaintiff contends that

22

Dr. Trojanowski purposefully copied Dr. Vogel's work, purposefully concealed the origin of the work, and purposefully and falsely portrayed himself as the source and origin of the work, and placed it into the stream of commerce knowing that it was targeted toward health care professionals and would be marketed to the three medical schools in the Middle District of North Carolina as well as to their students and faculty in the forum. Dr. Trojanowski should have expected to be haled into North Carolina's courts to answer for his wrongful acts, carried out in conjunction with the other defendants, and due process is not offended thereby.

(*Id.* at 13.)

I find that this court may not assert personal jurisdiction over Dr. Trojanowski. In sum, Plaintiff cites the following contacts with North Carolina in support of this court's assertion of personal jurisdiction over Dr. Trojanowski: (1) Dr. Trojanowski's submission of a manuscript for a single chapter in Wolters' *Pathology* textbook; (2) Wolters' act of crediting Dr. Trojanowski with an associate editor title; (3) Wolters' sales of the *Pathology* textbook to medical centers and students in North Narolina; (4) Dr. Trojanowski's posting of research results, lectures, and discussions of medical topics unrelated to this case on internet web sites; (5) Dr. Trojanowski's participation in a grant application to an organization that was formed by rotary chapters and officers in several states (of which North Carolina is merely one); (6) a presentation by Dr. Trojanowski at Duke University on Alzheimer's disease; and (7) Dr. Trojanowski's co-authorship of articles unrelated to this matter with professors at Duke University, which involved nothing more than emails and calls to professors in North Carolina. (*See* Trojanowski Supp. Decl. ¶ 12.)

First, as for the exercise of specific personal jurisdiction, as noted Plaintiff must show that the controversy between the parties is related to or arises out of a defendant's contacts with the forum. *See Woods Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744, 748 (M.D.N.C. 2006). Plaintiff's claims do not arise out of any activities in North Carolina that can be attributed to Dr. Trojanowski. Indeed, Plaintiff incorrectly attributes Wolters' conduct to Dr. Trojanowski in an attempt to assert specific jurisdiction. Whereas the Wolters Defendants are the publishers of the book *Pathology,* Dr. Trojanowski is merely a contributor of one chapter to the book. As the publisher of this larger work, Wolters, not Dr. Trojanowski, has contacts with the forums in which the works are sold.[6] Thus, Wolters' sales of *Pathology* textbooks in North Carolina are irrelevant to determining personal jurisdiction over Dr. Trojanowski because Dr. Trojanowski had no control over or involvement in these sales. (*See* Trojanowski Supp. Decl. ¶ 17.) Courts in this and other circuits have overwhelmingly held that the contacts of a book's publishers must be evaluated separately from those of the authors. *See, e.g., Bochan v. La Fontaine*, 68 F. Supp. 2d 692, 699 n.25 (E.D. Va. 1999) ("A publisher's contacts must be evaluated

---

[6] In addition, as Defendants note, even if the court were to assume that Dr. Trojanowski was an employee of the Wolters Defendants, it is well established that in a personal jurisdiction analysis, the contacts of a corporation must be analyzed separately from any contacts by officers or employees of the corporation. *See May Apparel Group, Inc. v. AVA Import-Export, Inc.*, 902 F. Supp. 93, 97 (M.D.N.C. 1995) ("It is also well established that a corporation is a separate and distinct legal entity [from] its officers and directors. Thus, corporate employees are not subject to personal jurisdiction, even as to the employee's corporate activities unless the employee has sufficient minimum contacts with the forum.") (citations omitted).

separately from an author's contacts; jurisdiction does not necessarily exist over an author even where it does exist over a publisher."); *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996) ("[W]riting an article for a publication that is circulated throughout the nation, including the District [of Columbia], hardly constitutes doing or soliciting business, or engaging in a persistent course of conduct, *within* the District. The writer is not the publisher; [the writer's] contacts must be assessed separately.") (emphasis in original). Wolters' contacts with the forum cannot be attributed to Dr. Trojanowski merely because of the fact that Dr. Trojanowski authored part of the book at issue. Dr. Trojanowski's drafting and submission to Wolters of a manuscript for a chapter in the fourth edition of *Pathology* did not take place in North Carolina or involve this state. Furthermore, Dr. Trojanowski states in his Declaration that he has not reviewed, revised, or edited any other portion of the *Pathology* textbook; he was not informed that he had been named an associate editor of the Fifth Edition of *Pathology* before its publication; he has not signed any contract indicating that he is an editor or will perform any editorial services with regard to *Pathology*; and he has received no compensation for the use of his name as an associate editor of *Pathology*. (Trojanowski Supp. Decl. ¶¶ 10-11.)

In sum, Plaintiff has not shown that the court may assert jurisdiction against Dr. Trojanowski based on specific jurisdiction. In other words, Dr. Trojanowski has sufficiently shown that he has undertaken no action by which he "purposefully

25

avail[ed] [himself] of the privilege of conducting activities within [North Carolina], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Furthermore, none of Dr. Trojanowski's accused activities were "expressly aimed" at North Carolina. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). In sum, the court may not assert jurisdiction over Dr. Trojanowksi based on specific personal jurisdiction.

Nor has Plaintiff shown that Dr. Trojanowski's contacts with North Carolina have been continuous and systematic such that general jurisdiction may be asserted against him. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (explaining that a court may assert general jurisdiction only when a defendant's activities within a state are "thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities"). For instance, the fact that Dr. Trojanowski posts results of scientific research on various internet web sites and internet discussion forums does not justify asserting personal jurisdiction over him merely because residents of North Carolina may use the web sites or forums. Moreover, while Plaintiff maintains that these internet activities are directed at North Carolina, Plaintiff's only basis for this conclusory assertion is that there are several renowned medical centers within North Carolina. Plaintiff offers nothing more than conclusory allegations that Dr. Trojanowski purposely directed any of the factual information he posted on the web sites toward North Carolina. In any event, the purely informative informational web

26

site and forums in which Dr. Trojanowski posts information cannot alone serve as the basis for asserting personal jurisdiction over him. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 399 (4th Cir. 2003) (noting that "a person's action of placing information on the Internet is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed") (internal quotations omitted); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (holding that something more than posting and accessibility is needed to "indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state"); *Accu-Sport Int'l, Inc. v. Swing Dynamics, Inc.*, 367 F. Supp. 2d 923, 928-29 (M.D.N.C. 2005) (stating that participating in passive, purely information sites that may be accessed by persons in the forum is not a sufficient basis for the exercise of personal jurisdiction). Moreover, the fact that Dr. Trojanowski, on behalf of his employer, signed a grant application that was directed to North Carolina (among other states) demonstrates a tenuous contact with North Carolina, at best.

Furthermore, Dr. Trojanowski has asserted in his Declaration that he has visited North Carolina only once and for the purpose of giving a lecture at Duke University on Alzheimer's disease, a topic wholly unrelated to this matter. (Trojanowski Supp. Decl. ¶ 7, docket no. 33.) He further states that he has co-authored books with professors at Duke University unrelated to this matter from his home state of Pennsylvania. (*Id.* ¶ 12.) In sum, Plaintiff has alleged nothing more

27

than a few tenuous connections between Dr. Trojanowski and North Carolina, which bear no relationship to Plaintiff's claims in this case. These isolated contacts do not even begin to approach the level required to constitute continuous and systematic contacts with North Carolina, and, therefore, Dr. Trojanowski's motion to dismiss for lack of personal jurisdiction should be granted.

## CONCLUSION

For the reasons stated herein, it is **RECOMMENDED** that the court **GRANT** Defendants' motion to dismiss (docket no. 23). Therefore, the court should dismiss Plaintiff's claims for false designation of origin and unfair and deceptive trade practices. Furthermore, because the court may not assert personal jurisdiction over Defendant Trojanowski, he should be dismissed as a Defendant. Thus, if the court adopts this Memorandum Opinion and Recommendation, the sole remaining claim will be a claim for copyright infringement against the Wolters Defendants.

_____
Wallace W. Dixon
United States Magistrate Judge

March 18, 2008